**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MALIK SHABAZZ, #R53189, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-03005-SMY |
| | ) | |
| DEBBIE ISAACS, [1] | ) | |
| DENNIS LARSON, | ) | |
| ROB JEFFREYS, and | ) | |
| ILLINOIS DEPT. OF CORRECTIONS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

This matter is before the Court for consideration of two motions for summary judgment for failure to exhaust administrative remedies filed by Defendants Dennis Larson, M.D. (Doc. 71) and Debbie Isaacs (Doc. 74). For the following reasons, Defendant Larson's motion will be **GRANTED**, and Defendant Isaacs's motion will be **DENIED**.

### BACKGROUND

Plaintiff Malik Shabazz, an inmate in the custody of the Illinois Department of Corrections (IDOC), filed this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (Rehab Act). The Complaint (Doc. 1) and First Amended Complaint (Doc. 7) were dismissed without prejudice for violating Federal Rules of Civil Procedure 8 and 18-21. (Doc. 13). Plaintiff filed a Second Amended Complaint (Doc. 14) on October 20, 2023.

In the Second Amended Complaint, Plaintiff alleges violations of his rights at Big Muddy River Correctional Center (BMRCC) and Lawrence Correctional Center (Lawrence). (Doc. 14).

---

[1] The Clerk's Office will be **DIRECTED** to **UPDATE** the docket sheet to correct the spelling of "Debbie Isaacs" as reflected in the case caption and Answer at Doc. 33.

The Court severed improperly joined claims arising at BMRCC (Counts 3, 6, 7) and at Lawrence (Counts 8-18) into separate cases, *see* Doc. 17, and screened all remaining claims (Counts 1, 2, 4, 5) under 28 U.S.C. § 1915A, *see* Doc. 18.

In support of Counts 1, 2, 4, and 5, Plaintiff alleges he is a wheelchair-bound inmate, who suffers from partial paralysis caused by old gunshot wounds. (Doc. 14, p. 13). He was denied adequate medical care and reasonable accommodations at BMRCC from July 2021 until July 2022. *Id*. Isaacs refused to issue him a permit for extra showers even though he suffered frequent bouts of incontinence, and denied his request for a special mattress to alleviate pain associated with his lingering injuries. *Id*. Larson regularly met with Plaintiff at BMRCC to discuss his medical issues but refused to issue him a permit for extra showers or a special mattress. *Id*. In February 2022, Plaintiff developed severe swelling in his lower left leg, and Larson would not examine, test, or treat him. *Id*. When he filed grievances about the matter, Larson retaliated against him. *Id*.

The following claims survived screening under 28 U.S.C. § 1915A:

Count 1:    ADA/Rehab Act claim against IDOC and Jeffreys (official capacity) for denying Plaintiff's shower permit in 2021-22.

Count 2:    Eighth Amendment claim against Isaacs and Larson for denying Plaintiff a shower permit and a therapeutic mattress permit in 2021-22.

Count 4:    Eighth Amendment claim against Larson for denying Plaintiff medical treatment for extreme swelling in his legs in February 2022.

(Doc. 18). The First Amendment retaliation claim (Count 5) against Larson was dismissed. *Id*.

In their Answers to the Second Amended Complaint, all defendants raised an affirmative defense based on Plaintiff's alleged failure to exhaust his administrative remedies. (Docs. 31, 33). IDOC and Jeffreys later withdrew their affirmative defense in connection with the ADA/Rehab Act claim in Count 1, *see* Docs. 50 and 54, and Larson and Isaacs moved for summary judgment based on Plaintiff's failure to exhaust remedies for Counts 2 and 3, *see* Docs. 71 and 74.

**MOTIONS FOR SUMMARY JUDGMENT**

Isaacs moves for summary judgment on Count 2 (Doc. 74), and Larson seeks summary judgment on Counts 2 and 3 (Doc. 71).  Both defendants argue that Plaintiff knew how to use the grievance process and filed grievances regularly.  *Id.*  Isaacs asserts that she is neither named nor identified in the four grievances that Plaintiff submitted to the ARB to complain about the lack of shower access (*i.e.*, Grievances #60-12-21, #80-12-21, #81-12-21, and #08-22-11) and no other grievances address claims against her.  (Doc. 75).  Larson asserts Plaintiff submitted no grievances about the doctor's denial of a special mattress permit; submitted one grievance addressing his denial of a permit for extra showers that was never appealed to the Administrative Review Board (ARB)/Director (*i.e.*, Grievance #84-6-22); and submitted four grievances addressing the denial of treatment for swelling in his legs in February 2022 that were not appealed to the ARB/Director (*i.e.*, Grievances #42-2-221, #121-3-221, #106-4-22, and #54-5-22).  (Doc. 72).

Plaintiff does not challenge any proposed findings of fact presented by Defendants.  As for Count 2, Plaintiff contends that Debbie Isaacs served as the ADA Coordinator and Health Care Unit (HCU) Administrator, so all grievances he filed about a special mattress and extra showers directly and indirectly involved her.  (Doc. 79).  He also alleges he filed "several" grievances about his ADA accommodations that were lost or misplaced.  (Docs. 78, 79).  Because he was not in "control [of] institutional functions," Plaintiff asks the Court not to fault him for the missing grievances.  *Id.*

As for Count 3, Plaintiff asserts he exhausted his swollen leg claim to the extent he could do so by mailing responses to the ARB.  *Id.*  Plaintiff included these grievances with the Second Amended Complaint and states he received the institution-level response(s) more than a month after each was denied, making an appeal to the ARB/Director late.  (Doc. 14).

3

Isaacs filed a Reply (Doc. 80) without requesting leave of the Court to do so, in violation of the Initial Scheduling Order (Doc. 34).[2]  Plaintiff filed three Replies (Docs. 94, 95, and 96),[3] in violation of the Court's Order (Doc. 92) denying his motion for leave to reply.  Because all four Replies (Docs. 80, 94, 95, and 96) are unauthorized, the Court will not consider them.

### FINDINGS OF FACT

The following material facts are taken from pleadings, affidavits, depositions, admissions, and answers to interrogatories and are considered undisputed for purposes of the pending motions:

Plaintiff's claims arose during his incarceration at Big Muddy River Correctional Center. (Doc. 14, pp. 2, 13-14).  At the time, Debbie Isaacs served as BMRCC's Health Care Unit (HCU) Administrator and ADA Coordinator.  Dr. Larson served as the prison physician.  *Id*.

In the Second Amended Complaint, Plaintiff alleges: Plaintiff suffers from partial paralysis caused by old gunshot wounds and requires the use of a wheelchair.  *See* Docs. 14, 17, and 18.  Dr. Larson knew Plaintiff was incontinent but would not issue a permit for extra showers.  (Doc. 18, pp. 2, 4).  Plaintiff was frequently forced to sit in soiled clothing.  Dr. Larson was also aware Plaintiff suffered from ongoing pain stemming from his old gunshot wounds but would not issue him a permit for a special mattress, resulting in additional unnecessary pain.  In February 2022, Plaintiff developed severe swelling in his left leg, but Dr. Larson refused to examine, test, or treat him, causing the condition to worsen.  *Id*.

At the time, BMRCC had a grievance procedure, and Plaintiff utilized it to present facts relating to his claims against Isaacs and Dr. Larson.  (FOF 13, Doc. 72; FOF 8, Doc. 75) (citing Doc. 14, p. 11).  Plaintiff's grievance records contain nine (9) grievances pertaining to the claims

---

[2] The Initial Scheduling Order provides that "any party wishing to file a reply brief shall, within three (3) days of service of the response, file a motion for leave. . . . Any reply briefs filed in violation of these requirements shall stricken and will not be considered." (Doc. 34, p. 4).
[3] Plaintiff's Reply (Doc. 93) to the Order (Doc. 87) for supplemental briefing on *Perttu* was timely filed.

against these defendants in Counts 2 and 3. The grievances are summarized below consistent with Defendants' unopposed Findings of Fact (Docs. 72, 75).

### Count 2

### Grievance 1: #60-12-21 (December 8, 2021)

Plaintiff submitted a grievance on December 8, 2021 to complain about his placement in restrictive housing two days earlier without a therapeutic mattress or access to ADA showers. (Doc. 72-4, ¶ 8a; Doc. 75-2, pp. 8-15). The mattress caused severe pain, and the lack of shower access caused him to sit in soiled clothing for days. His request for a crisis team was ignored. This grievance was marked and expedited as an emergency on December 10, 2021. Following review of the matter, a grievance officer determined that ADA accommodations were made and all other complaints were unsubstantiated. The grievance officer recommended denying the grievance as moot. The Chief Administrative Officer (CAO) concurred on May 3, 2022. Plaintiff signed the Offender's Appeal to the Director on May 9, 2022. The ARB determined that all ADA requirements were met, and the Director concurred on May 24, 2022. *Id*.

### Grievance 2: #81-12-21 (December 9, 2021)

Plaintiff submitted a grievance on December 9, 2021. (Doc. 72-4, ¶ 8c). He described his conversation with Lieutenant McCarthy about the 4-day denial of a shower. Plaintiff also described additional accidents caused by his incontinence from December 5-9, 2021, and complained about wearing soiled clothing and sleeping on soiled bed linens. *Id*. An unnamed officer told him clean linens were not available and there was "nothing he could do." *Id*. Plaintiff made complaints to several named personnel at BMRCC, but they ignored him. *Id*.

This grievance was marked and expedited as an emergency. Isaacs and Lt. McCarthy reviewed it and indicated ADA individuals in restrictive housing are taken to the receiving unit for

an accommodating shower and logs of shower activities indicate Plaintiff was offered showers on December 6 and 7, 2021.  The grievance officer recommended denying the grievance.  The CAO concurred.  (Ex. A, p. 24).  Plaintiff signed the Offender's Appeal on May 16, 2022.  *Id*.

### Grievance 3: #80-12-21 (December 10, 2021)

Plaintiff submitted a grievance on December 10, 2021, in which he also complained about his placement in restrictive housing without adequate shower access on December 6, 2021.  (Doc. 72-4, ¶ 8b).  He reported the shower in the segregated area was not ADA accessible for wheelchairs and his "issues have been raised to every type of staff available" at BMRCC.  *Id*.  The grievance was marked and expedited as an emergency.  Following review of the matter, a grievance officer recommended denying the grievance, and the CAO concurred.  (*Id*. at Ex. A, p. 29).  Plaintiff signed the Offender's Appeal to the Director on May 16, 2022.  *Id*.

The ARB consolidated Grievances #81-12-21 and 80-12-21 on June 10, 2022 and returned both to Plaintiff, noting they did not meet DR 504.  *Id*. at 23.  Plaintiff lacked further redress because the issues in Grievance #60-12-21 were resolved following a hearing on May 24, 2022, when the ARB determined that all ADA accommodations were met and the Director concurred.  (Ex. B, Bates 14).

### Grievance 4: #08-22-11 (July 28, 2022)

Plaintiff submitted Grievance #08-22-11 on July 28, 2022 to complain of excessive force used by BMRCC staff while escorting him to restrictive housing on July 24, 2022.  (Doc. 72-4, ¶ 8d).  He described wearing soiled underwear without shower access or medical treatment from July 24-27, 2022.  *Id*.  Plaintiff indicated staff were aware of and ignored his condition.  *Id*.  Plaintiff marked the grievance as an emergency, but the CAO deemed it a non-emergency on

6

August 2, 2022.  *Id*.   The ARB found Plaintiff's allegations of staff misconduct were unsubstantiated and denied the grievance on July 13, 2023.  *Id*.

### Grievance 5: #84-6-22 (June 11, 2022)

Plaintiff submitted Grievance #84-6-22 on June 11, 2022.  (Doc. 72, Ex. B, 271).  Plaintiff explained that he needed a permit for extra showers due to his incontinence.  *Id*.  He had one at his prior facility and "complained to [the] Doctor for months about [the] issue but to no avail."  *Id*. at 272.  The grievance was marked and expedited as an emergency.  *Id*. at 271.  The grievance officer indicated Plaintiff needed to write to "health care" to have a new permit issued, as his permit expired on June 1, 2022.  *Id*. at 270.  On this basis, the grievance officer recommended denying the grievance, and the CAO concurred.  *Id*.  Plaintiff did not sign the Offender's Appeal to the Director, and Grievance #84-6-22 was not contained in Plaintiff's ARB records.  (*See* Ex. A, 1-4). According to the same response, Plaintiff transferred from BMRCC to Lawrence on July 27, 2022. (Doc. 72, Ex. B, 270).

### Count 3

### Grievance 1: #42-2-221 (February 1, 2022)

Plaintiff submitted Grievance #42-2-221 on February 1, 2022 to address his request for pain medication for his neck and left leg.  (Doc. 72, Ex. B, p. 277).  The Counselor indicated Plaintiff was seen by a licensed provider to determine medications and care plans and received all medications ordered.  *Id*.  A grievance officer did not review the grievance.  *Id*.  Plaintiff included this grievance with the Second Amended Complaint.  (Doc. 14, p. 30).

### Grievance 2: #121-3-221 (March 12, 2022)

Plaintiff submitted Grievance #121-3-221 on March 12, 2022, alleging Dr. Larson refused to renew his pain medication.  (Doc. 72, Ex. B, p. 278-288).  The grievance was marked and

expedited as an emergency.  The grievance officer recommended that it be deemed moot due to Plaintiff's transfer from BMRCC, but noted Plaintiff could forward the grievance to the ARB for review.  *Id*. at 286.  Plaintiff's ARB records do not include this grievance.  (*See* Ex. A, 1-4). Plaintiff attached it to his Second Amended Complaint.  (Doc. 14, pp. 38-39).

### Grievance 3: #106-4-221 (April 13, 2022)

Plaintiff submitted Grievance #106-4-221 to address Dr. Larson's treatment of excessive swelling in his left leg on April 13, 2022.  (Doc. 72, Ex. B, 291-92).  The grievance was marked and expedited as an emergency. *Id*.  The grievance officer recommended denying it as moot, based on Plaintiff's transfer to Lawrence.  *Id*. at 290.  The grievance officer indicated Plaintiff could forward it to the ARB for review, but the grievance was not included in his ARB records.  (*See* Ex. A, 1-4).  Plaintiff attached it to his Second Amended Complaint.  (Doc. 14, pp. 36-37).

### Grievance 4: #54-5-22 (May 4, 2022)

Plaintiff submitted Grievance #54-5-22 to report Dr. Larson's failure to follow the recommendation of an outside specialist when treating his left leg on May 4, 2022.  (Doc. 72, Ex. B, 295-96).  The grievance was marked and expedited as an emergency.  It contains two responses dated two months apart from different BMRCC grievance officers.  *Id*. at 293-94.  The first recommended denying it as moot based on Plaintiff's transfer to Lawrence.  *Id*. at 294.  The second recommended denying it as being outside of the 60-day timeframe.  *Id*. at 293.  The CAO concurred with the decision(s).  *Id*.  Plaintiff did not sign the Offender's Appeal.  *Id*.  This grievance was not contained in Plaintiff's ARB records, *see* Ex. A, 1-4, but Plaintiff attached it to his Second Amended Complaint.  (Doc. 14, pp. 34-35).

## DISCUSSION

### Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party, *i.e.*, the prisoner. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Generally, the district court's role on summary judgment is not to weigh evidence or judge witness credibility.

The district court's approach to factual disputes is different when presented with a motion for summary judgment on the issue of exhaustion. In *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), the Seventh Circuit instructed district courts to conduct an evidentiary hearing to resolve contested issues of fact concerning exhaustion. More recently, the Supreme Court partially overruled *Pavey* in *Perttu v. Richards*, 605 U.S. 460, 464 (June 18, 2025) when it held that exhaustion disputes must be reserved for a jury if contested facts on exhaustion are intertwined with factual disputes on the merits of a claim. Thus, when the district court is presented with a motion for summary judgment on exhaustion with material facts in dispute, it must consider whether intertwinement between exhaustion and the merits requires a jury trial. Here, the Court finds no intertwinement between factual disputes on exhaustion and the merits of claims covered by the Seventh Amendment.[4] *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009).

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires a prisoner to exhaust all available administrative remedies before bringing a suit in federal court. *Pavey*, 544 F.3d at 740.

---

[4] The Supreme Court decided *Perttu* while the summary judgment motions were pending, so the Court requested supplemental briefing that addresses the impact of *Perttu* on the motions. The parties filed Supplemental Briefs. *See* Docs. 87-89, 93. After considering them, the Court finds no *Perttu* issue. This case involves a single ADA/Rehab Act claim and two Eighth Amendment deliberate indifference claims. Plaintiff's retaliation claim against Larson was dismissed at screening under 28 U.S.C. § 1915A, and Plaintiff did not replead the claim. In addition, this defendant played no role in reviewing grievances. Questions about exhaustion can be resolved without addressing questions about the merits of the surviving claims.

To properly exhaust, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

The Illinois Administrative Code sets forth the grievance process for inmates in the custody of the Illinois Department of Corrections. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The standard grievance procedure requires an inmate to file his grievance with a counselor within 60 days of the incident, occurrence, or problem giving rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). If the grievance is not resolved informally through the counselor, the grievance must be submitted in writing to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO) within 2 months after receiving the written grievance, when reasonably feasible. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the CAO's response, he may file an appeal with the IDOC Director through the Administrative Review Board (ARB) within 30 days of the CAO's decision. 20 ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of responses from the grievance officer and CAO to his appeal. *Id.* The ARB considers the matter and submits a written report of its findings and recommendations to the Director, who makes a final determination within 6 months of receipt of the matter, when reasonably feasible under the circumstances. 20 ILL. ADMIN. CODE §§ 504.850(d), (e).

A separate procedure is available for inmates facing an emergency. The inmate can submit his emergency grievance directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If the warden

determines that the grievance presents an emergency, the grievance is expedited for processing as directed. *Id.* If the CAO finds no emergency, the grievance is denied as a non-emergency and must be resubmitted in accordance with the standard grievance procedure outlined above. 20 ILL. ADMIN. CODE § 504.840(c).

An inmate grieving one of the following issues shall submit a grievance directly to the ARB for processing under § 504.850: (1) protective custody; (2) involuntary administration of psychotropic medication; (3) disciplinary proceedings at another facility; and (4) issues other than property or medical that pertain to another facility. 20 ILL. ADMIN. CODE §§ 504.870(a)(1)-(4).

### Analysis

### *Defendant Isaacs*

The question on summary judgment is whether any properly exhausted grievances for Count 2 put prison officials on notice of Plaintiff's Eighth Amendment deliberate indifference claims against Isaacs where Plaintiff did not specifically name her in his grievances. The PLRA requires prisoners to exhaust all available administrative remedies before bringing a suit in federal court, *see* 42 U.S.C. § 1997e(a), but it does not impose a "name all defendants" requirement. *Jones v. Bock*, 549 U.S. 199, 217 (2007). The purpose of the PLRA's exhaustion requirement is to alert the prison to the nature of the wrong for which redress is sought and invite corrective action. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). In keeping with this purpose, a grievance must contain "enough information about who caused the grievance or problem so that a prison can properly investigate and resolve grievances." *Jackson v. Esser*, 105 F.4th 948 (7th Cir. 2024).

When considering the sufficiency of the content, courts look to state law for guidance. *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020). Under Illinois law, a grievance must provide factual details about each aspect of the offender's complaint. *See* 20 ILL. ADMIN. CODE

§ 504.810(c).  This includes a description of what happened, when it happened, where it occurred, and who is the subject or otherwise involved in the complaint.  *Id*.  If available, the offender must also include the name of each individual involved.  If not available, the offender should provide as much descriptive information as possible.  *Id*.

In this case, the parties identify four grievances addressing the claims against Isaacs in Count 2:  Grievances #60-12-21, #80-12-21, #81-12-21, and #08-22-11.  All four pertain to the denial of Plaintiff's shower access and his resulting exposure to soiled clothing.  Grievance #60-12-21 also describes the denial of a special mattress and Plaintiff's resulting pain.  Because Grievance #60-12-21 addresses both issues in Count 2, the Court will consider whether it exhausts remedies against Isaacs.

Grievance #60-12-21 specifically addresses Plaintiff's request for "Medical Treatment" and "ADA Disability Accommodation."[5]  (Doc. 75-2, p. 10).  Plaintiff complains about his lack of access to a special mattress and ADA showers in restrictive housing.  (Doc. 72-4, ¶ 8a).  According to the grievance, Plaintiff's mattress caused severe pain, and the lack of shower access caused him to sit in soiled clothing for days at a time.  *Id*.  It is undisputed that this grievance was properly filed at each level of the grievance process "in the place, and at the time, the prison's administrative rules require."  *See Pozo*, 286 F.3d at 1025.  It was also denied on the merits.

Isaacs argues this grievance does not serve to exhaust the constitutional claims against her because Plaintiff did not explicitly name her or adequately describe her.  At all times relevant to this action, Isaacs served as BMRCC's HCU Administrator *and* ADA Coordinator.  (Doc. 14, pp. 2, 13-14).  BMRCC routed all medical grievances to the HCU Administrator for a response and routed all ADA grievances to the ADA Coordinator for a response.  (*See, e.g.,* Doc. 79, pp. 3-4,

---

[5] IDOC and Director Jeffreys did not move for summary judgment based on Plaintiff's failure to exhaust his claims under the ADA/Rehab Act in Count 1, so this claim will proceed against them. (Docs. 50, 54).

Ex. B).  Given her dual role, Isaacs processed the medical *and* ADA grievances.  The grievance officer who responded to Grievance #60-12-21 acknowledged this, stating the "allegations were reviewed by Health Care Unit Administrator/ADA Coordinator Debbie Isaacs. . . ."  (Doc. 75-2, p. 8).  The grievance officer went on to explain that Isaacs investigated the issues described in this grievance, determined that ADA individuals were provided ADA accommodated showers in "Receiving," and concluded the records contain "[n]o documentation to substantiate [Plaintiff's] other complaints."[6]  *Id*.

Given the undisputed facts, the fact that Plaintiff did not provide Isaacs's first and last name or describe her in detail is not fatal to the issue of exhaustion.  *See, e.g., Arce v. Wexford Health Services*, No. 18-cv-1348-SMY-GCS, 2019 WL 6702692, at *5 (S.D. Ill. Oct. 9, 2019) (grievance describing inadequate medical care deemed sufficient to exhaust claim against treating doctor and nurse practitioner who were not named in grievance).  This grievance served to exhaust the constitutional claims against Issacs in Count 2, and  Plaintiff did not need to file a new, additional, or separate grievance against Isaacs for the ongoing deprivation of a mattress and showers at BMRCC.  *Barrow v. Wexford Health Sources, Inc.*, No. 14-cv-800-NJR-DGW, 2015 WL 5010104, at *4 (S.D. Ill. Aug. 24, 2014) ("[A] previously submitted grievance will suffice to exhaust for future events so long as the prisoner remained in the same situation").

Additionally, Plaintiff was not required to identify the constitutional source of his claims in the grievance.  *See Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) (grievant need not articulate legal theories).  Although Plaintiff cannot rely on a grievance that focuses only on ADA disability accommodations to exhaust an Eighth Amendment claim, *see McDaniel v. Syed*, 115

---

[6] This response is similar to the grievance officer's responses for Grievance #80-12-21 (*see* Doc. 75-1, p. 7) and Grievance #81-12-21 (*see* Doc. 75-1, p. 2), in which HCU Administrator/ADA Coordinator Isaacs is identified as the person who reviewed the issues therein.

F.4th 805, 825 (7th Cir. 2024), he was careful to identify his grievance as *both* a complaint about his medical care and his request for accommodations.  The grievance officer's response recognized that the grievance covered both issues.  (Doc. 75-2, p. 8) (characterizing "Nature of Grievance" as "Medical Treatment," "ADA Accommodation," and "Emergency Review").  Isaacs was also the individual who handled both types of complaints.

In sum, Grievance #60-12-21 exhausts Plaintiff's administrative remedies for the Eighth Amendment claim in Count 2 against Isaacs for the mattress and shower issues.[7]  Therefore, Isaacs's motion for summary judgment (Doc. 74) will be denied.

### *Defendant Dr. Larson*

Turning to the claims against Dr. Larson, the question on summary judgment is whether Plaintiff exhausted his available administrative remedies for his Eighth Amendment mattress and shower access claims in Count 2 and his medical treatment claim involving leg pain and swelling in Count 3.  Dr. Larson points to no grievances filed about the mattress request in Count 2, one grievance filed about Dr. Larson's denial of his shower access in Count 2 (Grievance #84-6-22), and four grievances submitted about Dr. Larson's inadequate treatment of leg swelling in Count 3 (Grievances #42-2-221, #121-3-221, #106-4-22, and #54-5-22).  Plaintiff's ARB records include no appeals of these grievances with the ARB/Director.

Plaintiff transferred from BMRCC to Lawrence while his grievances were pending.  When he eventually received institutional responses for Grievance #84-6-22 addressing Count 2 and Grievances #42-2-221, #121-3-221, #106-4-22, and #54-5-22 addressing Count 3, Plaintiff claims it was too late to timely appeal each decision to the ARB/Director.  Plaintiff also claims he

---

[7] Because Grievance #60-12-21 served to exhaust Plaintiff's administrative remedies for Count 2 against this defendant, the Court need not address the other three grievances that focus only on shower access (*i.e.*, Grievances #80-12-21, #81-12-21, and #08-22-11).

submitted "several" other grievances about his mattress and shower claim in Count 2 that went missing, and asks the Court not to fault him for these missing grievances. (*See* Doc. 78, pp. 1-4). In short, Plaintiff argues administrative remedies were unavailable to him due to his prison transfer, slow grievance responses, and missing grievances.

The PLRA "does not demand the impossible… [r]emedies that are genuinely unavailable or nonexistent need not be exhausted." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). An inmate must exhaust "those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (citation omitted).

In *Ross*, the United States Supreme Court described three situations when administrative remedies are unavailable and exhaustion is not required. *Ross*, 578 U.S. at 643-44. First, a grievance process is rendered unavailable if the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use." *Id*. Second, an administrative remedies process is rendered unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 644. Third, an administrative remedies process becomes unavailable when the administrative procedures serve as a "simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643. The unavailability exception to the PLRA's exhaustion requirement must be narrowly construed. *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022).

The unavailability exception does not apply here. As for the mattress claim in Count 2, the undisputed facts demonstrate that the grievance process was available. Plaintiff exhausted Grievance #60-12-21 addressing the mattress issue in Count 2 against Isaacs. However, neither party argues this grievance or any others exhausted the mattress claim against Dr. Larson. The

grievance does not name or describe him, and Dr. Larson played no role in reviewing or addressing this or any other grievance about the mattress issue. As such, Dr. Larson's request for summary judgment on the mattress claim in Count 2 will be granted.

It is undisputed that Plaintiff transferred to Lawrence while the shower access claim in Count 2 (Grievance #84-6-22) and inadequate medical treatment claim in Count 3 (Grievances #42-2-221, #121-3-221, #106-4-22, and #54-5-22) were still under review. Plaintiff eventually received responses, but maintains his appeals to the ARB/Director would have been late. A prisoner's remedies are unavailable when he follows each step of the grievance process and can do nothing more. *Pyles*, 829 F.3d at 865 (7th Cir. 2016). In this case, Plaintiff could appeal each grievance decision to the ARB/Director even after he transferred facilities. However, Plaintiff has provided no evidence of his efforts to appeal, and the ARB has no record of any attempts. By all indications, Plaintiff assumed an appeal would be fruitless, abandoned the grievance process, and filed suit in federal court instead.

Even when there are no remaining administrative remedies left, a prisoner's grievance will be deemed unexhausted if he simply stops following the steps in the grievance process. *Pozo*, 286 F.3d at 1025 (7th Cir. 2002). Here, Plaintiff abandoned the grievance process for Grievance #84-6-22 addressing Count 2 and Grievances #42-2-221, #121-3-221, #106-4-22, and #54-5-22 addressing Count 3. Thus, Dr. Larson is entitled to summary judgment on the shower access claim in Count 2 and the leg swelling claim in Count 3.

Plaintiff's affidavit represents an attempt to create material factual disputes on summary judgment where none exist. (Docs. 78, 79). He attests that "several" grievances were filed at BMRCC about his mattress claim and shower access claim in Count 2, but went missing. (Doc. 78, pp. 1-4). He included a grievance vaguely mentioning "several" unidentified grievances and

16

complaining they were never addressed at BMRCC. His reference to "several" additional grievances is too vague to create a genuine factual dispute about exhaustion; he offers no information about specific dates he prepared and filed each grievance, the contents of each grievance, who was identified therein, where he submitted each grievance, whether he checked the status of each one, etc. Therefore, Plaintiff's affidavit does not help him overcome summary judgment as to Dr. Larson. *See Adusummilli v. Chicago*, 164 F.3d 353, 360 (7th Cir. 1998); *see also James v. Hale*, 959 F.3d 307, 317 (7th Cir. 2020) (summary judgment cannot be defeated through submission of affidavit containing conclusory allegations that contradict plain admissions in prior depositions or other sworn testimony).

### DISPOSITION

The Amended Motion for Summary Judgment filed by Dennis Larson, M.D. (Doc. 71) is **GRANTED**, and **COUNTS 2** and **3** against this defendant are **DISMISSED without prejudice**. The Amended Motion for Summary Judgment filed by Debbie Isaacs (Doc. 74) is **DENIED**; **COUNT 2** will proceed against this defendant.

Now that the issue of exhaustion is resolved, the following claims will proceed to the merits: **COUNT 1** against Defendants **Illinois Department of Corrections** and **Rob Jeffreys**, and **COUNT 2 (mattress and shower access claim)** against Defendant **Isaacs**. The Court will enter a separate Scheduling and Discovery Order lifting the stay on discovery and providing further instructions and deadlines for litigation of these claims.

**Because no other claims remain pending against Dennis Larson, M.D., the Clerk's Office is DIRECTED to TERMINATE Dennis Larson, M.D. as a defendant in CM/ECF.**

Judgment as to Dennis Larson, M.D., shall enter accordingly at the close of this case.

**IT IS SO ORDERED.**

**DATED:   March 24, 2026**         _s/ Staci M. Yandle_____
                                    **STACI M. YANDLE**
                                    **Chief U.S. District Judge**